UNITED GOLD & PLATINUM MINES CO. v. SMITH.

(Supreme Court, Appellate Division, First Department.   May 13, 1904.)

1. CORPORATIONS—STOCK—ISSUANCE—RIGHTS OF HOLDERS—INJUNCTION.

An agreement for the merger of certain mining companies into plaintiff company provided that to defendant, who held "as trustee" a majority of the stock of a merged company, should be issued "as trustee" a corresponding amount of plaintiff's stock. Thereafter defendant, by virtue of his controlling interest, caused a board of directors of plaintiff, named by him, to be elected, who elected defendant treasurer of plaintiff, whereupon he issued to himself as an individual 130,000 shares of its stock. Thereafter one of the companies merged authorized the issuance of notes to be offered, with a bonus of 500 shares each of its stock, which notes defendant was authorized to negotiate. He acquired some of these notes, entitling him to 8,000 shares of the company's stock, which he exchanged for stock in plaintiff company. Plaintiff charged that these shares were issued irregularly and without consideration, and defendant, in his affidavits opposing an injunction before answer, merely stated that he had taken up the notes for the 8,000 shares for value, and that he received the 130,000 shares from one of the merged companies under a resolution granting the same to him in consideration of $25,000, which he was informed by his bookkeeper he had advanced to the company. It appeared, however, that such advancement was to be treated as a debt of the merged company, to be repaid from money received from the sale of shares, and it did not appear that any board of directors of plaintiff authorized the exchange, or that there was a proper authorization and issue of the stock. *Held*, that an injunction restraining defendant from voting or selling such stock was justified.

Appeal from Special Term, New York County.

Suit by the United Gold & Platinum Mines Company against Charles E. W. Smith. From an order granting an injunction restraining defendant from voting on or disposing of certain shares of plaintiff company, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

Walter W. Cooper, for appellant.
Chas. J. Hardy, for respondent.

O'BRIEN, J. The order appealed from restrains the defendant from voting upon or disposing of 130,000 shares of the plaintiff's stock which it is averred he has wrongfully obtained in his own name upon the claim that he was entitled to them by virtue of a resolution of a predecessor company, and from voting upon or disposing of 8,000 shares of plaintiff's stock which it is alleged he holds wrongfully claiming he obtained them for a consideration. The complaint presents two causes of action with respect to the 130,000 and the 8,000 shares, respectively, asking as to each a return of such shares to the treasury of the company.

With respect to the 130,000 shares, the complaint avers that the

plaintiff company is a corporation organized under the laws of Arizona, with a capital stock of 2,000,000 shares, and was formed pursuant to a so-called "merger" agreement, whereby the property of the American Gold & Platinum Mines Company was to be merged, and the stock of each of the two latter companies to be exchanged for the stock of the United Gold & Platinum Mines Company at a stated ratio. The merger agreement further provided that to this defendant Charles E. W. Smith, who held as trustee a majority of the stock of both companies, should be issued as trustee the corresponding amount of stock of the plaintiff company. The complaint avers that "instead" of so receiving "as trustee" the stock of the plaintiff company as provided in the merger agreement, the defendant, who, by virtue of his controlling interest, caused to be elected a board of directors of plaintiff by him named, and caused himself to be elected treasurer of the plaintiff, did issue and cause to be issued to himself individually the said 130,000 shares of stock, and, at a meeting called for January 12, 1904, in New York City, threatens to vote on such stock unless restrained. With respect to the 8,000 shares, the complaint avers that after the merger agreement the American Company passed a resolution, June 16, 1902, authorizing the issue of notes not exceeding $20,000, in sums of $1,000 each, and with such notes offered a bonus of 500 shares each of the stock of the American Company, and that the defendant appropriated eight of such notes of the American Company, and has issued to himself, for the bonus shares of the American Company, 8,000 shares of plaintiff company, and threatens to vote upon such 8,000 shares. No answer has been interposed to the complaint, and a motion was made for an injunction, upon which motion the complaint and affidavits were submitted setting forth the above facts.

The defendant in his opposing affidavits averred, with respect to the 8,000 shares, merely that he had taken up the notes in question for value; and, with respect to the 130,000 shares, he avers that by a resolution of the American Company stockholders it was resolved that he should receive, in consideration of $25,000 (which sum he is informed by his bookkeeper was the amount he had advanced to that company), and moneys to be advanced and services rendered and to be rendered by him, stock of the American Company; and this resolution of the stockholders of that company was ratified by resolution of its directors, and, for such amount of stock which he thus received, stock of the plaintiff company was, as provided in the merger agreement, issued to him, and he now holds in his own right the 130,000 shares. The resolution of the stockholders of the American Company states, after referring to the consideration mentioned, that the said $25,000, and other sums he may thereafter expend, "shall be repaid to him out of the first money received in the treasury of the company by sales of the treasury stock."

The learned judge at Special Term, in granting the injunction, called attention to the fact that, although the resolution of the American Company mentions the $25,000 as included in the consideration for the issuing of the stock to the defendant, it thereafter permits that amount to remain a charge against the company. With respect to this $25,000, it will be noticed that the defendant himself says, merely, that his

"bookkeeper informed" him that such sum had been advanced.    Among the affidavits of plaintiff is one denying that any such sum, or any sum, is or was due the defendant.    And it was further averred by plaintiff, and not denied, that the resolution of the directors of the American Company was passed by but three of nine directors, and of these one was the defendant and the others two small·holders.    There is thus good reason for holding that the resolution was ineffectual for passing title to the stock of the American Company.    But, apart from this, as pointed out by the Special Term, it nowhere appears by what authority, other than the mere provisions of the merger agreement, the stock of the American Company thus dedicated by the resolution to the defendant was exchanged and a new stock of the plaintiff company issued therefor.    It does not appear that any board of directors of the plaintiff company authorized the issue to the defendant, and, even though the merger agreement provided that such an exchange was to be made, it does not appear that there was a proper authorization and issue of the stock.

So far as the resolution of the American Company confers any right on the defendant to the 130,000 shares, there is a serious question as to whether he was entitled to such shares individually or as trustee. Though it was resolved by the American Company that the shares should be issued to defendant, the complaint and supporting affidavits would tend to show that these shares were to be held in reality as treasury stock.    If, under the merger agreement, the defendant was to receive an equal number of shares in the new or united company, the same question is presented as· to whether he holds them individually or as trustee.    We have not overlooked the fact that the plaintiff claims that these shares were without right taken, and were never properly, or by any resolution of the united company, issued to the defendant; but assuming—a view most favorable to the defendant—that he was entitled to have such new stock issued to him, the question which we have suggested is in the case, and should be disposed of, not upon his naked claim of ownership, but upon a trial when all the facts in relation thereto can be examined and a decision reached on the merits.

With respect to the 8,000 shares, the Special Term points out that we have no facts showing that the defendant properly·acquired the notes.    He merely states as a conclusion that he holds them for value, and this is insufficient.    And in the affidavit of Mr. Hall it is stated:

"The company's records show that the only authorization with regard to those notes given defendant was that he should negotiate them for the purposes of raising money to exploit the company's properties.    I know, and state it to be the fact, that the audit and report made of the company's affairs shows that he was not in fact a creditor of the company at the time he appropriated these notes, with the accompanying bonus stock."

The defendant does not assert that at the time he got the notes he advanced any money, and we are left to infer that what he claims is that, for loans or advances at some other times made to the company, he, as a creditor to the extent of the notes, was entitled to hold them. Whether he was or was not a creditor is in dispute, and even though he were, as he received the notes, not for the indebtedness to him, if any existed, but for the purpose of negotiating them and raising money for

the company, it is, to say the least, doubtful whether he could convert them to his own use and retain them as his own property, together with the stock bonus which it was intended should be given to the persons who were willing to purchase or discount the notes.

The other questions presented by the appellant do not, we think, require discussion, our conclusion being that the learned judge at Special Term was right in granting the order appealed from, and accordingly it is affirmed, with $10 costs and disbursements. All concur.